# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MICHAEL LANDERS,                                   Case No. 1:13-cv-838
     Petitioner,

                                      Dlott, J.
     vs.                                            Bowman, M.J.


WARDEN, SOUTHERN OHIO              **REPORT AND**
CORRECTIONAL FACILITY,              **RECOMMENDATION**
     Respondent.

Petitioner, an inmate in state custody at the Southern Ohio Correctional Facility in Lucasville, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The case is before the Court on the petition and respondent's return of writ with exhibits. (Docs. 1, 6). Respondent has also supplemented the record by filing the trial transcript in compliance with an Order issued October 30, 2014. (*See* Docs. 7, 8). Therefore, it appears that the matter is now ripe for disposition.

## I. PROCEDURAL HISTORY

### State Trial Proceedings

In August 2011, the Butler County, Ohio, grand jury returned an indictment charging petitioner with one count of aggravated robbery in violation of Ohio Rev. Code § 2911.01(A)(1), two counts of felonious assault in violation of Ohio Rev. Code § 2903.11(A), and one count of having weapons while under disability in violation of Ohio Rev. Code § 2923.13(A)(3). (Doc. 6, Ex. 2). A firearm specification was attached to the aggravated robbery and felonious assault charges. (*Id.*). The facts giving rise to the charges were summarized as follows by the Ohio

Court of Appeals, Twelfth Appellate District:[1]

> In the early morning hours of June 14, 2011, Zachary Parsons left the Grub Pu[b], a bar near his home.  Parsons encountered his friend, who asked him to purchase crack cocaine for him.  Parsons agreed, and began walking again until he came upon several people on the porch of a near-by house, some of whom he knew.  Parsons approached the people on the porch and offered to sell his cell phone for $40 in order to purchase the cocaine for his friend.  One of the men took the phone and began to toss it around to the others, and eventually Landers had the phone.
>
> Once Landers had possession of the phone, he began walking away from the porch and down the street.  Parsons followed Landers, pleading for his phone to be returned.  Landers returned to the porch, retrieved a gun from another person on the porch, and told Parson[]s that he was going to give him a chance to run.  However, Landers immediately began shooting at Parsons, wounding him four times.  Landers laughed to his friends that he had just shot Parsons.
>
> Parsons made it to his home before he collapsed, where his girlfriend called for emergency assistance.  Parsons received treatment for gunshot wounds to his right lower leg, left lower leg, left thigh, and lower back.  Detectives with the Hamilton Police Department went to interview Parsons at the hospital, and showed him a photographic "line-up" of possible suspects.  Parsons identified one of the men from the porch in the first line-up, but did not see his shooter.  Detectives then received information that Landers shot Parsons, and detectives returned to the hospital with another photographic line-up, this time, including Landers' photograph.  Parsons immediately identified Landers as his shooter.

 (*Id.*, Ex. 8, Opinion, pp. 1-2).

Petitioner was tried with Daryl Wallace, who had been separately charged with

complicity as the "person on the porch who gave Landers the gun."  (*See id.*, p. 2).  After the

state presented its case-in-chief, Wallace entered a guilty plea pursuant to *North Carolina v.*

*Alford*, 400 U.S. 25 (1970).  (*See id.* & Ex. 3).  Petitioner, however, continued with his trial

before the jury, which ultimately found him guilty as charged.  (*See id.*, Ex. 1 & Ex. 8, Opinion,

pp. 2-3).  Following a sentencing hearing, the trial court issued a Judgment Entry on November

---

[1] The Ohio appellate court summarized the facts in its direct appeal decision filed July 16, 2012.  (*See* Doc. 6, Ex. 8, Opinion).  28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless the petitioner rebuts the presumption by "clear and convincing evidence."  In the absence of clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted below, the appellate court's findings are presumed to be correct.  *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

9, 2011, sentencing petitioner to an aggregate prison term of twelve and one-half (12 ½) years.

(*Id.*, Ex. 1 & Ex. 8, Opinion, p. 3).[2]

### State Appeal Proceedings

Petitioner's trial counsel filed a timely notice of appeal on petitioner's behalf to the Ohio

Court of Appeals, Twelfth Appellate District. (Doc. 6, Ex. 4). Thereafter, with the assistance of

new counsel for appeal purposes, petitioner filed an appellate brief in which he asserted two

assignments of error:

1. It was error for the court to overrule the Criminal Rule 29 Motion to Dismiss by the appellant at the end of State[']s case specifically in regard to the Aggravated Robbery Count as there was insufficient evidence to go to the jury on said count.

2. It was error to instruct the Jury in response to a question from the jury relative to the [g]uilt of all persons on the porch that there was insufficient evidence to convict anyone but the appellant.

(*Id.*, Ex. 5). On July 16, 2012, the Ohio Court of Appeals issued a Judgment Entry and Opinion

overruling petitioner's assignments of error and affirming the trial court's judgment. (*Id.*, Ex. 8).

Petitioner next pursued a timely *pro se* appeal to the Ohio Supreme Court. (*Id.*, Exs. 9-

10). In his memorandum in support of jurisdiction, petitioner presented the following

propositions of law:

1. Does Criminal Rule 29(A) protect an accused against conviction upon circumstantial evidence except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged?

2. Does a trial court deny Defendant[] due process when it supplies the answer and the weight and sufficiency of the evidence to the jur[y's] question of fact that an accused committed an offense if not the original person committing the offense?

---

[2] Specifically, petitioner was sentenced to the following consecutive terms of imprisonment: eight (8) years for the aggravated robbery offense; three (3) years for the merged firearm specification attached to the aggravated robbery charge; and eighteen (18) months for the weapons offense. (*See* Doc. 6, Ex. 1). Petitioner was also sentenced to an 8-year prison term for the merged felonious assault offenses, but that sentence was to be served concurrently with the sentence imposed for aggravated robbery. (*See id.*).

(*Id.*, Ex. 10).

On November 28, 2012, the Ohio Supreme Court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question."  (*Id.*, Ex. 11).

**Federal Habeas Corpus**

In November 2013, petitioner initiated the instant federal habeas action.  In his *pro se* petition, petitioner presents two grounds for relief:

> **Ground One:**  This case raises two critical issues for the Court to resolve: (1) the crime for which Appellant has been convicted, the elements of the offense of Aggravated Robbery when there was really insufficient evidence that such a crime was committed.
>
> **Ground Two:**  The victim wasn't a relia[]ble witness because he switch[ed] up his story multiple times and had drugs in his system the time he sa[id] the crime was committed.

 (Doc. 1, pp. 5-6).

In the return of writ filed in response to the petition, respondent contends that petitioner procedurally defaulted and has waived the claim alleged in Ground Two and, in any event, that the ground for relief "is not cognizable in federal habeas corpus review."  (Doc. 6, Brief, pp. 8-9, 16-18).  Respondent further argues that petitioner has not demonstrated he is entitled to habeas relief based on the merits of his claim in Ground One challenging the sufficiency of the evidence supporting his conviction for aggravated robbery.  (*Id.*, pp. 12-16).

**II.  OPINION**

> **A.  Petitioner Procedurally Defaulted And Has Waived The Claim In Ground Two Attacking The Victim's Credibility; In Any Event, Petitioner's Allegations Do Not Give Rise To A Cognizable Claim For Federal Habeas Corpus Relief**

In Ground Two of the petition, petitioner contends that he is entitled to federal habeas corpus relief because the victim, Zachary Parsons, was not a reliable prosecution witness.  (Doc. 1, p. 6).  In support of this claim, petitioner points out that the Parsons changed "his story

4

multiple times" and also alleges that Parsons was under the influence of drugs at the time the crimes occurred. (*Id.*).

As a threshold matter, petitioner concedes that he never presented the claim essentially attacking the credibility of Parsons as a prosecution witness to the state courts for their consideration. (*See id.*). Therefore, as respondent has argued, it appears that petitioner procedurally defaulted and has waived the ground for relief.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). In order to satisfy the fair presentation requirement, the claims asserted in the federal habeas petition must be based on the same facts and same legal theories that were presented to the state courts. *Carter v. Mitchell*, 693 F.3d 555, 568 (6th Cir. 2012) (citing *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)). Moreover, a claim is deemed fairly presented only if the petitioner presented his constitutional claims for relief to the state's highest court for consideration. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985).

If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir.

1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).  Federal habeas corpus review of a defaulted claim is precluded unless the petitioner can demonstrate cause for and prejudice from his procedural default or that failure to consider the defaulted claim will result in a "fundamental miscarriage of justice."  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Harris,* 489 U.S. at 262; *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, petitioner has admitted that he committed a procedural default by acknowledging that he never presented the claim alleged in Ground Two of the petition to the state courts.  Therefore, this Court's review of such claim is barred unless petitioner can demonstrate cause for and actual prejudice from the default or that failure to consider the defaulted claim will result in a "fundamental miscarriage of justice."  *See, e.g., Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262; *Murray,* 477 U.S. at 485.

Here, petitioner has not made the requisite showing of cause or prejudice. Petitioner has only averred that he "recently discovered" that Parsons was an unreliable witness without citing any facts in support of that general contention.  (*See* Doc. 1, p. 6).  Moreover, with respect to his underlying claim for relief, petitioner has merely stated that Parsons "switch[ed] up his story multiple times and had drugs in his system the time he sa[id] the crime was committed," again without citing any facts or making any specific arguments in support of those conclusory allegations.  (*See id.*).  In order to overcome a procedural default, "[h]abeas petitioners cannot rely on conclusory assertions of cause and prejudice" and instead "must present affirmative evidence or argument as to precise cause and prejudice produced."  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (and cases cited therein); *see also Foster v. Warden, Chillicothe Corr. Inst.,* 575 F. App'x 650, 653 (6th Cir. 2014).  In the absence of such "affirmative evidence or argument," petitioner's conclusory assertions are simply insufficient to justify excusing the

procedural bar to review in this case.

In addition, petitioner has not demonstrated that failure to consider the claim alleged in Ground Two will result in a "fundamental miscarriage of justice," or in other words, that the alleged error "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995). No such showing has been made to the extent that petitioner has challenged the sufficiency of the evidence introduced at trial to establish his guilt, because actual innocence means factual innocence, not mere legal insufficiency. *See House v. Bell,* 547 U.S. 518, 538 (2006); *Carter v. Mitchell,* 443 F.3d 517, 538 (6th Cir. 2006) (citing *Bousley v. United States,* 523 U.S. 614, 623 (1998)); *Wright v. Lazaroff,* 643 F. Supp.2d 971, 989 (S.D. Ohio 2009) (Barrett, J.; Hogan, M.J.); *see also Vanwinkle v. United States,* 645 F.3d 365, 369 (6th Cir. 2011).

Instead, in order to overcome the procedural bar to review based on a credible claim of actual innocence, the petitioner must establish that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'" *House,* 547 U.S. at 536-37 (2006) (quoting *Schlup,* 513 U.S. at 327); *cf. Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005); *McSwain v. Davis,* 287 F. App'x 450, 458 (6th Cir. 2008). The standard is "demanding and permits review only in the 'extraordinary' case." *House,* 547 U.S. at 538 (quoting *Schlup,* 513 U.S. at 327). To be credible, a claim of actual innocence must be based on "new reliable evidence . . . that was not presented at trial." *Id.* at 537 (quoting *Schlup,* 513 U.S. at 324); *see also Calderon v. Thompson,* 523 U.S. 538, 559 (1998). Here, to the extent that petitioner's attack on Parsons' credibility may be construed as a claim of actual innocence, petitioner has failed to provide any evidence, much less "new reliable evidence," to substantiate his conclusory allegations. Therefore, he has not demonstrated that the actual innocence exception applies to overcome the procedural default bar to review in this case.

In any event, the claim alleged in Ground Two does not, standing alone, rise to the level of a cognizable ground for federal habeas relief.  This Court's review is limited to consideration of claims alleging a violation of "the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Claims based on a "perceived error of state law" fall outside the scope of the Court's review and, therefore, do not constitute cognizable grounds for federal habeas relief. *See id.*; *see also Wilson v. Corcoran,* 562 U.S. 1, 131 S.Ct. 13, 16 (2010) (per curiam) (quoting *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"); *Pulley v. Harris,* 465 U.S. 37, 41 (1984).

To the extent that petitioner's claim challenging the reliability of Parsons as a prosecution witness is based on "recently discovered" evidence that was not presented at petitioner's jury trial, petitioner has not even remotely suggested that error of constitutional dimension occurred, such as through the State's withholding of material exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  Furthermore, to the extent petitioner may be arguing that the "recently discovered" evidence demonstrates that he is innocent of the crimes charged against him, he has not stated a cognizable ground for federal habeas relief.  *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) (quoting *Townsend v. Sain*, 372 U.S. 293, 317 (1963)) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceedings."); *see also House*, 547 U.S. at 554-55 (in declining to answer the question left open in *Herrera*—*i.e.*, whether a freestanding claim of actual innocence constitutes a cognizable ground for federal habeas relief in a capital case, the Supreme Court indicated that *Herrera* "requires more convincing proof of innocence" than that required to obtain review of an independent claim of constitutional terror occurring at trial under standards enunciated by the

Supreme Court in *Schlup*). Because the Supreme Court has yet to recognize a freestanding actual innocence claim, the Sixth Circuit has repeatedly ruled that, particularly in the context of a non-capital case such as this, such claims are not cognizable on federal habeas review. *See, e.g., Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007) (and Sixth Circuit cases cited therein); *Thomas v. Perry*, 553 F. App'x 485, 487 (6th Cir. 2014); *Sitto v. Lafler*, 279 F. App'x 381, 382 (6th Cir. 2008); *Wright v. Stegall*, 247 F. App'x 709, 711 (6th Cir. 2007); *see also Speer v. United States*, No. 2:12cv277, 2014 WL 1367076, at *2 (S.D. Ohio Apr. 7, 2014) (Marbley, J.) (and Sixth Circuit cases cited therein) (holding that the petitioner was unable to obtain habeas relief based on a freestanding claim of actual innocence because the Supreme Court has never recognized such a claim).

Finally, to the extent that petitioner has alleged a record-based claim based on Parsons' "multiple" changes in testimony, such claim does not trigger constitutional concerns to the extent petitioner suggests that, as a matter of state law, the jury's verdicts of guilt were against the manifest weight of the evidence. *See, e.g., Richardson v. Smith,* No. 3:11cv1217, 2012 WL 5903986, at *17 (N.D. Ohio Oct. 30, 2012) (Report & Recommendation) (quoting *Tibbs v. Florida*, 457 U.S. 31, 41-47 (1982)) ("claim that a conviction is against the manifest weight of the evidence is not cognizable in federal habeas corpus review" because it is "derived from purely state law whereby the state appellate court sits as a 'thirteenth juror and disagrees with fact finder's resolution of conflicting testimony' and finds that the fact finder 'clearly lost its way and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered'"), *adopted*, 2012 WL 5903896 (N.D. Ohio Nov. 26, 2012); *cf. Nash v. Eberlin*, 258 F. App'x 761, 765 & n.4 (6th Cir. 2007) (in holding that "a state court's decision on the manifest weight of the evidence subsume[s] a decision on the sufficiency of the evidence" for purposes of procedural default analysis, the Sixth Circuit also recognized that "a manifest-weight-of-the-

9

evidence argument is a state-law argument").  *See also* 28 U.S.C. § 2254(a); *Wilson,* 131 S.Ct. at 16; *Estelle,* 502 U.S. at 67-68; *Pulley,* 465 U.S. at 41.

The undersigned recognizes that a claim challenging the sufficiency of the evidence does present a due process issue that may be entertained in a federal habeas proceeding.  However, as discussed below in addressing Ground One of the petition, petitioner is unable to prevail on any argument that the jury's determination regarding the credibility to be accorded Parsons' testimony may be reviewed for error in considering the due process issue.  *See Jackson v. Virginia*, 443 U.S. 307, 318-19 & n.13 (1979) (because the trier of fact has the responsibility of resolving conflicts in testimony, weighing the evidence and drawing reasonable inferences from the evidence, the reviewing court is not permitted to reweigh the evidence, reevaluate the credibility of witnesses, make its own subjective determination of guilt or innocence, or otherwise substitute its opinion for that of the jury); *see also United States v. Fisher,* 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009)); *York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (per curiam).

Accordingly, in sum, petitioner is not entitled to relief based on the claim alleged in Ground Two of the petition.  Petitioner procedurally defaulted and has waived the ground for relief, which was never presented to the state courts for consideration.  In any event, petitioner's claim challenging the reliability of the victim as a prosecution witness does not, standing alone, constitute a cognizable ground for federal habeas relief.

**B.  Petitioner Has Not Demonstrated That He Is Entitled To Habeas Relief Based On The Merits Of The Claim In Ground One Challenging The Sufficiency Of The Evidence Supporting His Conviction For Aggravated Robbery**

In Ground One of the petition, petitioner alleges that the evidence presented at trial was insufficient to establish beyond a reasonable doubt the essential elements of the aggravated robbery offense charged against him.  (Doc. 1, p. 5).  The claim, which was first raised by

petitioner in a motion for acquittal pursuant to Ohio R. Crim. P. 29 that was denied by the trial

court and then later as a claim of error on appeal to both the Ohio Court of Appeals and Ohio

Supreme Court, was fairly presented to the state courts.  Therefore, the ground for relief is

subject to review on the merits in accordance with the standard of review set forth in 28 U.S.C.

2254(d).  Under that provision, a writ of habeas corpus may not issue with respect to any claim

adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established federal law, as determined by the United States
> Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at

a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state

court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts."  *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v.

Taylor,* 529 U.S. 362, 412-13 (2000)), *cert. denied,* 132 S.Ct. 1743 (2012).  "A state court's

adjudication only results in an 'unreasonable application' of clearly established federal law when

'the state court identifies the correct governing legal principle from [the Supreme] Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case.'"  *Id.* at 599-

600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet.  *Id.* at 600.

As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's
> standards.  *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179
> L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the

11

> record before the state court where a claim has been adjudicated on the merits by
> the state court).  It is not enough for us to determine that the state court's
> determination is *incorrect*; to grant the writ under this clause, we must hold that
> the state court's determination is *unreasonable*. . . .  This is a "substantially higher
> threshold.". . .  To warrant AEDPA deference, a state court's "decision on the
> merits" does not have to give any explanation for its results, *Harrington v.
> Richter,* [562] U.S. [86], 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it
> need to cite the relevant Supreme Court cases, as long as "neither the reasoning
> nor the result of the state-court decision contradicts them." *Early v. Packer,* 537
> U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original).  The Supreme Court more recently extended its ruling in *Harrington*

to hold that when a state court rules against a defendant in an opinion that "addresses some

issues but does not expressly address the federal claim in question," the federal habeas court

must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus

subject to the "restrictive standard of review" set out in § 2254(d).  *See Johnson v. Williams,*

U.S. __, 133 S.Ct. 1088, 1091 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete

bar on federal court relitigation of claims already rejected in state proceedings" and "preserves

authority to issue the writ in cases where there is no possibility fairminded jurists could disagree

that the state court's decision conflicts with [Supreme Court] precedents."  *Harrington,* 131 S.Ct.

at 786.  In other words, to obtain federal habeas relief under that provision, the state prisoner

must show that the state court ruling on the claim presented "was so lacking in justification that

there was an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement."  *Id.* at 786-87.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim

under § 2254(d), the federal habeas court must apply the Supreme Court precedents that

controlled at the time of the last state-court adjudication on the merits, as opposed to when the

conviction became "final."  *Greene v. Fisher,* __ U.S. __, 132 S.Ct. 38, 44-45 (2011); *cf. Otte,* 654

F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a

claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision").  Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court."  *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision."  *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

In this case, the Ohio Court of Appeals was the last state court to issue a reasoned decision addressing petitioner's claim challenging the sufficiency of the evidence.  (*See* Doc. 6, Ex. 8, Opinion).  Citing only state case-law, the court rejected petitioner's assignment of error, reasoning in pertinent part as follows with respect to the constitutional issue:

> In order to affirm the denial of a Crim.R. 29 motion, we need only find that there was legally sufficient evidence to sustain the guilty verdict. . . .  When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. . . .  "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.". . .
>
> Landers was charged with aggravated robbery in violation of R.C. 2911.01(A)(1), which states, "no person, in attempting or committing a theft offense, ***, or in fleeing immediately after the attempt or offense, shall do any of the following: have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."
>
> During the trial, the jury heard evidence that Landers used a gun during the commission of a theft offense, i.e., stealing Parsons' phone.  The jury heard testimony that Parsons was able to identify Landers from a photograph that police showed him, and that Landers had several identifying characteristics that set him apart from the other men on the porch such as permanent gold teeth, and "scruffy" hair.

Parsons testified that Landers was the man who began walking away from the porch with his phone, and that he began following Landers while saying, "give me my phone back, come on man, let me have my phone back." Parsons also testified that he told Landers, "you ain't just going to take my phone." Landers responded to Parsons by asking him if he was "jumping red, dog," which Parsons testified meant "getting attitude."

Landers argues that there was insufficient evidence that he committed a theft offense because when Parsons was asked by the state, and on cross-examination, whether he actually saw Landers with the phone, Parsons responded, "no." However, Parsons also stated that he saw Landers with the phone while Landers was on the porch, and that he "believed" that Landers had his phone when he quickly walked away from the porch. Parsons also stated that he followed Landers because he was under the assumption that he had the phone, and that when confronted, Landers returned to the porch and retrieved a gun in order to shoot Parsons.

While there was no direct testimony that Landers had Parsons' phone at the time he fired the gun, there exists circumstantial evidence to indicate that Landers committed a theft offense by stealing Parsons' phone. As the Ohio Supreme Court stated, "circumstantial evidence and direct evidence inherently possess the same probative value." . . .

After viewing the evidence in a light most favorable to the prosecution, the jury could have found the essential elements of the theft offense proven beyond a reasonable doubt. Landers' . . . assignment of error is overruled.

(*Id.*, pp. 3-5) (citations to Ohio cases omitted).

The clearly-established standard of review for evaluating the merits of constitutional claims challenging the sufficiency of the evidence was established by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). As the Supreme Court held in *Jackson*, because the Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense, *In Re Winship,* 397 U.S. 358, 363-64 (1970), "the relevant question" in assessing the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).

Under the *Jackson* standard, the State is not required to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir. 1983). It is the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court is not permitted to reweigh the evidence, reevaluate the credibility of witnesses, make its own subjective determination of guilt or innocence, or otherwise substitute its opinion for that of the jury. *See id.* at 318-19 & n.13; *see also United States v. Fisher,* 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009)); *York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (per curiam).

"Circumstantial evidence alone is sufficient to support a conviction." *Newman v. Metrish,* 543 F.3d 793, 796 (6th Cir. 2008) (quoting *Johnson v. Coyle,* 200 F.3d 987, 992 (6th Cir. 2000)); *see also Fisher*, 648 F.3d at 450. Due process is satisfied as long as such evidence is enough for a rational trier of fact to make a permissible *inference* of guilt, as opposed to a reasonable *speculation* that the petitioner is guilty of the charged crime. *Newman,* 543 F.3d at 796-97 (and Sixth Circuit cases cited therein).

Moreover, federal habeas review of a claim challenging the sufficiency of the evidence is even further limited. As the Sixth Circuit explained in *Brown*, 567 F.3d at 205, the federal habeas court is "bound by two layers of deference to groups who might view facts differently than [the habeas court] would." The federal habeas court must defer not only to the trier of fact's findings as required by *Jackson*, but under 28 U.S.C. § 2254(d), must also "defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* (emphasis

15

in original); *see also Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011), *cert. denied,* 132 S.Ct.

1927 (2012); *Anderson v. Trombley,* 451 F. App'x 469, 474-75 (6th Cir. 2011), *cert. denied,* 132

S.Ct. 1152 (2012).  Therefore, as the Sixth Circuit went on to emphasize in *Brown*:

> [W]e cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt.  We cannot even inquire whether *any* rational trier of fact would conclude that petitioner . . . is guilty of the offenses for which he was charged.  Instead, we must determine whether the Ohio Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial.

*Brown,* 567 F.3d at 205 (emphasis in original).

Applying the double-layer deferential standard to the case-at-hand, the undersigned is

convinced that the Ohio Court of Appeals' sufficiency determination is neither contrary to nor an

unreasonable application of *Jackson*.  It is clear from the record that the Ohio Court of Appeals'

determination is not contrary to *Jackson*, as the state court properly employed the deferential

standard of review enunciated in *Jackson* in addressing petitioner's claim.  Moreover, it was

reasonable for the Ohio Court of Appeals to conclude in applying that standard of review that

sufficient evidence was presented at trial to support the jury's finding that petitioner was guilty

beyond a reasonable doubt on the aggravated robbery charge.

As the Ohio Court of Appeals pointed out, the essential elements of the aggravated

robbery offense charged in the indictment (*see* Doc. 6, Ex. 2), which the State was required to

prove beyond a reasonable doubt, were that petitioner "did in attempting or committing a theft

offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the

attempt or offense, have a deadly weapon on or about [his] person or under [his] control and

either display[ed] the weapon, brandish[ed] it, indicated that [he] possess[ed] it, or use[d] it."

*See also* Ohio Ohio Rev. Code § 2911.01(A)(1).  Petitioner has never challenged the sufficiency

of the evidence supporting his convictions on the felonious assault charges that stemmed from

16

the shooting of the victim, Zachary Parsons.  Similarly, petitioner has not disputed that sufficient evidence was introduced at trial to establish as an element of the aggravated robbery charge that he had a deadly weapon on or about his person or under his control and displayed the weapon, brandished it, indicated that he possessed it, or used it against Parsons.  (*See* Doc. 6, Ex. 5, pp. 6-8; Ex. 10).  Petitioner has contended, however, that the State did not present sufficient evidence to establish another essential element of aggravated robbery—*i.e.*, that he was attempting or committing a theft offense, or fleeing immediately after such attempt or offense, when he returned to the porch, retrieved a firearm from another person on the porch and began shooting at Parsons.  (*See id.*).

As the trial court indicated in its instructions to the jury (*see* Doc. 8, Trial Tr. 264), the aggravated robbery charge was based on petitioner's alleged theft or attempted theft of Parsons' cell phone.  At trial, the State elicited the following testimony on Parsons' direct examination to establish that element of the offense:

Q.  [D]id you approach this group of people as they were on the porch?

A.  Yes, I did.

Q.  What did you say to them?

A.  Who wants to buy a phone.

Q.  Did anybody respond?

A.  A few people.  They said, let me see it. . . .   There was quite a few people there.  I gave it – I gave the phone to someone to look at and it ended up getting passed around.

Q.  Okay. So as it was being passed around, what were you doing?

A.  Standing there, watching – watching the phone.

Q.  All right.  Did either Daryl Wallace or Michael Landers end up with the phone in their hand?

A.  Yes.

17

Q.  Who?

A.  Michael.

Q.  Was that while you were standing there, was it as people were moving the phone around?

A.  Yeah.

Q.  What happened after Landers got the phone?

A.  He walked – started walking away, which now I believe he's walking to the – his getaway car.

Q.  All right.  Did you know that at the time?

A.  No, I didn't have any idea.  I just, I seen him walking away, I didn't know who had my phone, I seen him walking away . . . fast, so I automatically assumed this guy has got my phone.

(*Id.*, Trial Tr. 107-08).

On cross-examination, Parsons conceded that although he saw petitioner take his phone "once or twice" as it was being "passed back and forth" from person to person on the porch, he did not actually see petitioner with the phone "at the end" and, therefore, could not say "for sure" that petitioner was the person who ultimately ended up with his phone.  (*Id.*, Trial Tr. 149-50). However, Parsons testified that he "believe[d]" that petitioner had his phone when petitioner left the group and started to walk quickly away from the porch given petitioner's demeanor, "just the way he was acting, his body language, the laughing," which caused Parsons to run after petitioner, pleading for the return of his phone.  (*Id.*, Trial Tr. 149-50, 154-55).  Parsons also indicated that he followed petitioner back to the porch because he was convinced by the way petitioner responded to his pleas that petitioner was "trying to get [his] phone."  (*Id.*, Trial Tr. 156).  On redirect examination, Parsons reiterated that he believed that petitioner had his phone "[b]ecause he's the only one [in the group on the porch] that had the funny behavior."  (*Id.*, Trial Tr. 176).  Parsons explained:  "That you can tell somebody's body language in certain situations

18

what's going on and what – and I knew in my heart, didn't know, I believed, that he had my [phone] from the way he was acting." (*Id.*).

As the Ohio Court of Appeals recognized, because Parsons did not actually see petitioner with his phone when petitioner peeled off from the group on the porch, Parsons' testimony implicating petitioner in the theft or attempted theft of his cell phone constitutes only circumstantial evidence of guilt. However, as the Ohio Court of Appeals also correctly observed, circumstantial evidence is sufficient to support a conviction as long as such evidence is enough for a rational trier of fact to make a permissible inference of guilt. *See Newman,* 543 F.3d at 796-97; *see also Fisher*, 648 F.3d at 450.

The Court concedes that given Parsons' testimony that he could not say "for sure" whether petitioner was the person in the group on the porch who ultimately ended up with his phone, the question is close as to whether sufficient evidence was presented to support the reasonable inference (as opposed to speculation) that petitioner was attempting to commit or committing a theft offense at the time of the shooting. Nevertheless, under the double-layer standard of review that must be employed in this federal habeas proceeding, the undersigned finds that enough evidence was presented from which the Ohio Court of Appeals could reasonably conclude that a rational trier of fact could find petitioner guilty beyond a reasonable doubt on the aggravated robbery count. *See Brown,* 567 F.3d at 205.

Parsons testified that he saw petitioner with his cell phone right before petitioner left the group on the porch and started to walk quickly away. Parsons also testified that he believed petitioner had his phone at that time. Parsons' belief was based on his own personal observations of petitioner's suspicious behavior as compared to the behavior of the other people in the group who remained on the porch, as well as based on how petitioner responded to Parsons when Parsons followed after petitioner and pleaded for the return of his phone. To the extent

that petitioner has contended that Parsons' testimony lacks credibility, that was an issue "for the trier of fact to decide," not the reviewing court. *See Jackson*, 443 U.S. at 318-19. It, therefore, was not unreasonable for the Ohio Court of Appeals to determine under the applicable standard set forth in *Jackson*, 443 U.S. at 319, that after viewing Parsons' testimony in the light most favorable to the prosecution, a rational trier of fact could have inferred that petitioner was attempting to commit or committing the theft of Parsons' cell phone when, after Parsons followed petitioner and pleaded for the return of his cell phone, petitioner returned to the porch, retrieved a firearm and shot Parsons four times. (*See* Doc. 6, Ex. 8, Opinion, p. 5).

Accordingly, in sum, the undersigned concludes that petitioner is not entitled to habeas relief based on his claim in Ground One challenging the sufficiency of the evidence supporting his aggravated robbery conviction. Upon review of the trial transcript, and under the double-layer deferential standard of review that must be applied by this Court, the undersigned concludes that the Ohio Court of Appeals' determination that sufficient evidence was presented at trial to support petitioner's conviction is neither contrary to nor an unreasonable application of *Jackson*.

### IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claim alleged in Ground Two of the petition, which this Court has concluded is waived and thus procedurally barred from review, because under the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling or whether petitioner has stated a viable constitutional claim in the defaulted ground for relief.

A certificate of appealability should issue, however, with respect to the non-defaulted sufficiency-of-evidence claim alleged in Ground One, which is "adequate to deserve encouragement to proceed further."  *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation to deny relief based on petitioner's claim in Ground One challenging the sufficiency of the evidence supporting his aggravated robbery conviction would be taken in "good faith" and, therefore, should **GRANT** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

s/Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

21

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

MICHAEL LANDERS,                              Case No. 1:13-cv-838
    Petitioner

       vs                                    Dlott, J.
                                                 Bowman, M.J.

WARDEN, SOUTHERN OHIO
CORRECTIONAL FACILITY,
    Respondent

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc